IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Bankruptcy No. 19-23178-CMB |
| SHOPPINGTOWN MALL NY LLC, | Chapter 11 |
| Debtor. | Related to Doc. No. 587 |

*Appearances*: Desiree Yagan, pro se, Movant
Sarah Wenrich, Esq., for Debtor/Respondent

## MEMORANDUM OPINION

The matter presently before the Court is the *Motion to Allow Claim Temporarily for Voting Purposes* ("Motion to Allow," Doc. No. 587) filed by Desiree Yagan, who is proceeding pro se in this case. As clarified on the record at the hearings held on May 12, 2021, Ms. Yagan's motion is construed as a motion for leave to file a late claim.[1] The Motion to Allow is opposed by the Debtor, Shoppingtown Mall NY LLC (Doc. No. 598). For the reasons set forth herein, this Court finds that Ms. Yagan failed to establish excusable neglect, and the Motion to Allow must be denied.

Background & Procedural History

The above-captioned case was commenced on August 13, 2019, when Debtor filed a petition seeking relief under Chapter 11 of the Bankruptcy Code.[2] At the time of the filing, Debtor owned certain real property located in Dewitt, New York, known as Shoppingtown Mall. From its commencement, the case was plagued with contentious disputes between the Debtor and certain

---

[1] Pursuant to 28 U.S.C. §§1334 and 157, this Court has subject matter jurisdiction over this proceeding. Further, this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B).
[2] The Court takes judicial notice of the bankruptcy docket, the Debtor's Schedules, and the Claims Register for the purpose of setting forth the timing of events in this case and facts not reasonably in dispute. *See In re Stone Fox Capital LLC*, 572 B.R. 582, 584 n.3 (Bankr.W.D.Pa. 2017).

1

taxing bodies regarding real estate taxes owed on the Debtor's property. Ultimately, in November 2020, after a global mediation successfully resolved all disputes, the case appeared to be on track for a consensual plan. The following motions were filed with respect to the parties' settlement: *Expedited Motion for Entry of an Order Approving Private Sale of the Debtor's Real Property Free and Clear of Liens, Claims, and Encumbrances Pursuant to Settlement Agreement* (Doc. No. 483) and *Motion for Order Approving Settlement Agreement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure* (Doc. No. 485). The hearings were scheduled for December 14, 2020.

Ms. Yagan's first appearance in the case was in December 2020 when she filed an objection (Doc. No. 501) to the sale of Debtor's real property. The sale of the property was a key component of the global settlement among the parties. At the hearing held December 14, 2020, Ms. Yagan's objection to the sale was overruled. As noted on the record, Ms. Yagan's objection appeared more in the nature of an alleged claim against the Debtor. The deadline, however, for filing non-governmental claims expired on December 31, 2019.

On January 11, 2021, over one year after the bar date, Ms. Yagan filed a Proof of Claim asserting an unsecured claim in the amount of $11,000,000.00. The claim relates to an incident that occurred on Debtor's property on November 30, 2017. Ms. Yagan asserts that a motorist accelerated and intentionally struck her while she was walking through the mall parking lot. As described by Ms. Yagan, numerous claims stemmed from this incident including claims against local authorities and a medical malpractice claim against a rehabilitation center. The claims described against the Debtor involve allegations of failure to report the incident, failure to preserve alleged video surveillance, and some form of fraud in conjunction with local law enforcement regarding falsifying a police report and covering up a vehicular assault. Upon initial review of the

Proof of Claim, any potential liability of the Debtor is unclear, and the attached documents do not appear to provide any credible support.

On February 10, 2021, Debtor filed its *Fourth Amended Disclosure Statement to Accompany Debtor's Third Amended Chapter 11 Plan of Reorganization Dated February 10, 2021* ("Disclosure Statement," Doc. No. 549) and *Debtor's Third Amended Chapter 11 Plan of Reorganization Dated February 10, 2021* ("Plan," Doc. No. 548). Pursuant to the terms of the Plan, unless Ms. Yagan sought and obtained allowance of her claim, confirmation of the Plan would result in disallowance of the late-filed claim. *See* Plan, Article X. The proposed treatment of Ms. Yagan's claim was specifically addressed by counsel for the Debtor at the hearing on the Disclosure Statement held March 31, 2021, and Ms. Yagan participated in that hearing. The Disclosure Statement was approved over Ms. Yagan's objection (Doc. No. 558) by Order dated March 31, 2021 (Doc. No. 561). A confirmation hearing on the Plan was scheduled for May 12, 2021.

Shortly after the approval of the Disclosure Statement, the Debtor filed its *Motion to Estimate Claim of Desiree Yagan for Voting Purposes* ("Motion to Estimate," Doc. No. 569). Debtor requested that the claim be estimated in the amount of $0 as the claim was untimely and did not appear to support any claim, let alone an $11,000,000.00 claim, against the Debtor. The hearing on the Motion to Estimate was scheduled for the same time as the hearing on confirmation of the Plan.

On May 3, 2021, nearly four months after Ms. Yagan filed her late claim and approximately sixteen months after the deadline to file a proof of claim, Ms. Yagan filed her Motion to Allow. The Motion to Allow was also set for hearing on May 12, 2021, with the Plan and Motion to Estimate.

Ms. Yagan did not file an objection to the Plan; however, her vote was the sole vote rejecting the Plan. *See Plan Ballot Summary* (Doc. No. 597). As set forth on the record on May 12, 2021, the Plan could be confirmed but for the unresolved issues regarding Ms. Yagan's untimely claim. Whether Ms. Yagan's claim should be allowed and the value of the claim if allowed impact confirmation of the Plan.[3] Accordingly, the hearing on the Motion to Estimate and the confirmation hearing on the Plan have been continued to July 28, 2021, while the evidentiary hearing on the Motion to Allow was scheduled to proceed on June 23, 2021. Ms. Yagan assured the Court of her ability to participate in the evidentiary hearing via video conference despite only appearing telephonically at prior hearings.

By Order dated May 14, 2021 (Doc. No. 609), the Court set deadlines related to the evidentiary hearing. Witness lists, exhibit lists, and labeled exhibits were due by June 14, 2021. The Order further provided that the parties were to be prepared to proceed at the evidentiary hearing without delay or continuance. By letter dated June 11, 2021 (Doc. No. 626), Ms. Yagan sought an extension of deadlines related to the evidentiary hearing. The request was denied (Doc. No. 627) as Ms. Yagan failed to provide a basis upon which to grant an extension. Debtor timely filed its witness and exhibit lists (Doc. No. 624) and provided exhibits to the Court.

On the morning of the evidentiary hearing, which was set to commence at 9:00 a.m., Ms. Yagan submitted several sets of documents to the Court, including an emergency motion to adjourn the hearing (Doc. No. 635). Notably, she was not present when the Court began the hearing. Debtor's counsel was present with a witness and prepared to proceed. Over twenty minutes after

---

[3] *See* Order entered May 13, 2021 (Doc. No. 607). *See also Plan Ballot Summary* (Doc. No. 597) (providing that, even if Ms. Yagan held an allowed claim against the Debtor, "any claim held by Ms. Yagan in an amount less than $698,308.28 will not affect Class 7's acceptance of the Plan" thereby permitting confirmation of the Plan).

the hearing was scheduled to begin, the Court was able to reach Ms. Yagan by phone and connect her to the hearing. *See* Audio Recording of Hearing Held June 23, 2021, at 9:25:08-9:27:20. Ms. Yagan failed to provide any acceptable explanation for her failure to connect to the hearing on her own at least by telephone if she was unable to connect via video.[4] Nonetheless, Ms. Yagan was granted a brief continuance of the evidentiary hearing to June 29, 2021. Ms. Yagan was reminded that she failed to submit exhibits to the Court. She was also advised not to file documents the day before or the day of the evidentiary hearing. *See* Audio Recording of Hearing Held June 23, 2021, at 10:04:28-10:04:45.

Notwithstanding the foregoing, on the morning of the continued evidentiary hearing, Ms. Yagan submitted two sets of exhibits to the Court (Doc. Nos. 639-640).[5] Nonetheless, the Court proceeded with the evidentiary hearing, and Ms. Yagan participated via video conference. The Court heard the testimony of Ms. Yagan and Christina Wirick, a legal assistant and paralegal employed by Bernstein-Burkley, P.C., counsel for the Debtor in this case. Although Ms. Yagan testified for approximately two hours, the majority of her testimony was irrelevant to the narrow issue before the Court.[6] Further, the Court found her testimony to be self-serving and inconsistent thereby detracting from her credibility. The matter was taken under advisement and is now ripe for decision.

---

[4] Ms. Yagan has consistently stated at nearly every court appearance that her audio quality is poor. The Court advised her on numerous occasions to take steps to resolve that issue as it appears to be related only to her telephonic connection. The Court has not experienced similar issues with other hearing participants connecting by video or phone despite holding numerous hearings remotely for well over a year.

[5] The exhibits submitted at Doc. No. 639 are lettered A through X-2. The exhibits submitted at Doc. No. 640 are lettered A through K. Since there are duplicate letters, the Court will cite to the Doc. No. and letter of the exhibit for clarity.

[6] In light of Ms. Yagan's pro se status, the Court on two occasions provided citation to relevant case law and applicable factors to be considered in the determination of excusable neglect. *See* Order dated May 14, 2021 (Doc. No. 609) and Order dated June 15, 2021 (Doc. No. 627).

Findings of Fact

Debtor identified Ms. Yagan in its Schedules as an individual holding a nonpriority unsecured claim in the amount of $0 with said claim being contingent, unliquidated, and disputed. *See* Schedule E/F, Doc. Nos. 21 and 64. The Court set the deadline for filing a proof of claim as December 31, 2019. *See* Doc. No. 23. Service of the notice of the bar date was made on Ms. Yagan by first class mail at the following address: PO Box 645, Syracuse, NY 13214 (hereinafter the "PO Box").[7] *See* Audio Recording of Hearing Held June 29, 2021, at 11:05:51-11:06:43.[8] The mailing was not returned to sender as undeliverable nor was any other mailing to that address returned to Debtor's counsel in this case. *See* Audio Recording at 11:06:40-11:07:34. For thirty years, Ms. Yagan has maintained the PO Box. *See* Audio Recording at 11:29:00-50. Though she asserts that certain agencies and even a firm that represented the Debtor in some unrelated, prepetition state court litigation knew to send her mail to another address, she used the PO Box as her letterhead in correspondence regarding important legal matters. *See* Audio Recording at 11:29:00-11:37:52, 11:45:15-11:47:45; Exhibit 4A; Exhibit P (Doc. No. 639). The PO Box also appears as Ms. Yagan's address on the police report regarding the incident at the Debtor's property. *See* Exhibit

---

[7] The Court notes that Ms. Yagan used the PO Box as letterhead in correspondence as follows: PO Box 645, *Dewitt*, New York 13214. *See* Exhibit P (Doc. No. 639) (emphasis added). Ms. Yagan did not challenge the use of *Syracuse* instead of *Dewitt*. Further, she could not credibly argue this point as she filed correspondence from Geico General Insurance Company addressed to the PO Box at Syracuse instead of Dewitt. Accordingly, the Court finds this to be a distinction without a difference as Ms. Yagan clearly received mail addressed in the same form as the Debtor used in this case. *See* Doc. No. 626, at 12 (admitted as Debtor's Exhibit 6).

[8] The Audio Recording of the evidentiary hearing held June 29, 2021, shall hereinafter be referred to as "Audio Recording." Although held via video conference, the recording is designated as being held in Courtroom B.

6

4B. Further, Ms. Yagan continued to collect mail from the PO Box even after the bankruptcy case was filed. *See* Exhibit 6.[9]

To the extent Ms. Yagan asserts that she did not receive notice of the bar date, the Court finds Ms. Yagan's testimony is not credible. Ms. Yagan acknowledges that she previously advised the Court on the record at the hearings held December 14, 2020, that she received numerous mailings from Attorney Burkley, the Debtor's counsel, related to this bankruptcy case.[10] Ms. Yagan has now changed her position and asserts that she misspoke when she made that representation to the Court. *See* Audio Recording at 9:08:52-9:13:53.[11] Instead, Ms. Yagan contends the mailings were from Geico Insurance Company and could not have been from Debtor's counsel as she was referring to the mail she collected after she was released from a rehabilitation center in June 2018, long before the Debtor filed its bankruptcy case. *See* Audio Recording at 9:11:06-9:12:20. The Court finds this testimony unconvincing as Ms. Yagan specifically referred to correspondence from Attorney Burkley, which she would have received by the time of the December 14th hearings regardless of the proximity to when she was released from the rehabilitation center. Ms. Yagan's change in position is not credible and conveniently occurred after Ms. Yagan filed her untimely claim and faced the burden of establishing excusable neglect.[12]

---

[9] After the Debtor filed its exhibits, Ms. Yagan filed a document with the Court (Doc. No. 626) which included a letter from Geico General Insurance Company addressed to the PO Box dated October 4, 2019. The letter was admitted as Debtor's Exhibit 6 and appears to be the same as Ms. Yagan's Exhibit I (Doc. No. 640), without redactions. The date of the letter and its receipt by Ms. Yagan establish that she continued to check her mail at the PO Box after this case was filed.

[10] *See* Audio Recording of Hearing Held Dec. 14, 2020, at 10:41:30-59.

[11] To the extent Ms. Yagan asserts that her misstatement was the result of nerves, the Court finds the assertion unconvincing. On the record at the evidentiary hearing, Ms. Yagan referred to her experience with the courts, ability to maintain composures in such proceedings, and the multiple instances when she has appeared pro se in a variety of legal matters. *See* Audio Recording at 9:10:14-21, 9:10:38-9:11:05, 9:12:20-45, 9:14:05-9:15:30, 9:35:54-9:36:10.

[12] The Court finds Ms. Yagan's testimony and exhibits regarding other instances outside of this bankruptcy case when she experienced mailing irregularities to be irrelevant. *See* Audio Recording at

Further, Ms. Yagan's testimony regarding when she learned of the bankruptcy case was disingenuous. Initially, Ms. Yagan testified that she had no idea that the Debtor filed a bankruptcy case until the end of 2020 when she discovered the information on the internet. *See* Audio Recording at 10:22:03-10:24:05. Her further testimony indicated that, when she learned of the sale in December 2020, she became concerned that the bankruptcy case could impact her. *See* Audio Recording at 11:14:25-11:18:54. Later, Ms. Yagan acknowledged, *only after being confronted by Debtor's counsel*, that she sent an email dated June 3, 2020, to counsel for the Debtor, among others, with reference to the Debtor and the bankruptcy case number. *See* Audio Recording at 11:24:20-11:26:59; Exhibit 3. Therefore, Ms. Yagan's initial testimony regarding her knowledge of the case was misleading until faced with a document establishing that she was aware of the case at least several months earlier.[13]

While Ms. Yagan asserts that if she had known about the bankruptcy case she would have participated and filed a timely proof of claim, Ms. Yagan admits that she became distracted after being arrested for a sign violation and was focused instead on representing herself in a jury trial. *See* Audio Recording at 9:59:00-10:04:20, 10:23:26-10:28:57. She indicates that she had previously been closely monitoring the Debtor in state court prior to the bankruptcy filing and intended to make a filing in state court; however, her preparation for a jury trial consumed her

---

10:21:22-10:22:00, 10:33:20-10:34:15, 10:49:08-10:53:58, 10:55:45-10:58:30; Exhibits X, X-1, X-2 (Doc. No. 639). For example, whether incorrect addresses were used by the Liverpool Justice Court involving entirely different matters has no bearing on whether Ms. Yagan received notice of the bar date in this bankruptcy case.

[13]  In its response, Debtor also advises of the extensive local news coverage of the bankruptcy filing. *See* Doc. No. 598, at ¶15. Although Ms. Yagan testified that she does not watch local news, her testimony indicates that she does monitor the newspaper. *See* Audio Recording at 10:22:50-59, 11:16:45-11:17:09, 11:18:11-33. News coverage of the bankruptcy proceedings only further diminishes Ms. Yagan's credibility regarding her knowledge of this case.

8

time. *See* Audio Recording at 9:42:50-9:46:28, 10:24:00-10:28:57. Even if Ms. Yagan was distracted by other legal matters at the time the bankruptcy case was filed, Ms. Yagan failed to take any steps to assert a claim or protect her interests in this case until, at the earliest, December 2020. If Ms. Yagan had been closely monitoring the Debtor prepetition and planning to commence a state court action, it is unfathomable that she would suddenly fail to monitor Debtor again until December 2020, regardless of the distractions related to other litigation. Further, Ms. Yagan's knowledge of the bankruptcy case, the case number, and the identity of Debtor's bankruptcy counsel is confirmed as early as June 2020. Given Ms. Yagan's familiarity with accessing court dockets, it is even less likely that she was unaware of the status of this case at that time as she was clearly aware of the case number. Rather, despite the notice of the bar date and knowledge of the bankruptcy proceedings, Ms. Yagan was not prompted to action until learning of the proposed sale of property in this bankruptcy case.

Analysis

Based on the foregoing, the Court must address whether Ms. Yagan's untimely claim should be allowed. Pursuant to Fed.R.Bankr.P. 3003(c)(3), the Court fixes a deadline for filing claims in a Chapter 11 case. A creditor whose claim is disputed, contingent, or unliquidated is required to file a proof of claim by the deadline otherwise the creditor "shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." *See* Fed.R.Bankr.P. 3003(c)(2). Nonetheless, a claimant may seek permission to file a late claim pursuant to Fed.R.Bankr.P. 9006(b)(1). *See In re Draw Another Circle, LLC*, 595 B.R. 174, 180 (Bankr.D.Del. 2018). Permission will only be granted if the failure was the result of "excusable neglect." *Id.*

A finding of excusable neglect is an equitable determination based on all relevant circumstances surrounding the party's omission. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.*

9

*Ltd. P'ship*, 507 U.S. 380, 395 (1993). Factors to be considered include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *See id.* The burden of establishing excusable neglect is on the party filing the late claim. *See In re Energy Future Holdings Corp.*, 619 B.R. 99, 110 (Bankr.D.Del. 2020) (citing *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir. 2000)).

Despite issuing two orders setting forth the standard and applicable factors to be considered in the excusable neglect analysis,[14] Ms. Yagan failed to address the danger of prejudice to the Debtor and the length of the delay and its impact on these proceedings. Therefore, the Court will begin by addressing the factors that Ms. Yagan addressed at the evidentiary hearing.

With respect to the reason for the delay, Ms. Yagan contends that she did not receive notice of the bar date. As set forth above, based on the credible testimony and evidence, notice of the bar date was served on Ms. Yagan at an address she used in correspondence regarding important legal matters and continues to maintain.[15] The mailing was not returned to the sender, and Ms. Yagan initially acknowledged receiving mailings from Debtor's counsel in this case. The reason proffered for the delay, that Ms. Yagan never received the notice and only learned of the bankruptcy case in late 2020 via the internet, is not credible. This is especially true as Ms. Yagan's own correspondence establishes her knowledge of the case in June 2020. Further, Ms. Yagan's proposed excuse, that perhaps she did not receive the notice due to some unexplained mailing irregularity, is incapable of verification and undermined by Ms. Yagan's lack of credibility.

---

[14] *See* Order dated May 14, 2021 (Doc. No. 609) and Order dated June 15, 2021 (Doc. No. 627).
[15] *See PacifiCorp v. W.R. Grace*, No. 05-764, 2006 WL 2375371, at *16, 2006 U.S. Dist LEXIS 57470, at *52 (D.Del. Aug. 16, 2006) ("If mail is properly addressed, stamped, and mailed, there is a presumption that the notice was received.").

Further, there is no evidence that that the Debtor contributed to Ms. Yagan's delay in filing the claim. Whatever the reason for Ms. Yagan's delay, she failed to establish that the reason for the delay weighs in her favor.[16] To the contrary, this factor decisively weighs against a finding of excusable neglect.

Upon considering whether Ms. Yagan acted in good faith, the inconsistencies in the testimony regarding Ms. Yagan's receipt of mail and knowledge of the bankruptcy case are troubling.[17] In addition, Ms. Yagan's insinuation that service at the PO Box was somehow improper despite her continued use of the PO Box on letterhead in various other legal matters even after the bankruptcy case was filed is disingenuous. Further, Ms. Yagan has not diligently pursued seeking allowance of her late claim despite filing the claim over one year after the bar date. She was unprepared to proceed at the evidentiary hearing scheduled on June 23, 2021, when Debtor's counsel appeared with a witness present. No acceptable reason was provided by Ms. Yagan for her failure to connect to the hearing at least telephonically. Instead, the Court contacted Ms. Yagan and found she was able to answer the call during what should have been the evidentiary hearing on her Motion to Allow. The Court finds Ms. Yagan did not act in good faith in filing her late claim nor has she demonstrated good faith thereafter. Therefore, based on the record and the testimony, this factor does not weigh in favor of a determination of excusable neglect.[18]

---

[16]  Based on the record, the Court finds that lack of notice of the bar date was not the reason for Ms. Yagan's delay; however, the Court cannot determine the reason why she failed to timely participate. Whether Ms. Yagan was distracted by her other litigation, simply dilatory, failed to recover from other entities, and/or lost interest in pursuing this entity after a bankruptcy filing until a sale brought millions of dollars into the estate, there are various possibilities why Ms. Yagan failed to act.

[17]  *See Draw Another Circle*, 595 B.R. at 183 (addressing as part of the good faith analysis claimant's contention that she was not properly served with notices when she had envelopes from the debtor's claims agent in her possession but not deciding claimant's good faith as it would not alter the court's analysis).

[18]  Although the Court makes no findings regarding the merits of Ms. Yagan's claim, a Proof of Claim in the amount of $11 million without any substantiation of that amount raises questions regarding the legitimacy of the claim and the intention of the claimant.

The two additional *Pioneer* factors were not addressed by Ms. Yagan. Debtor's counsel addressed both in her closing statement based on the record of the case. To complete the analysis, the Court considers whether there is a danger of prejudice to the Debtor and the length of the delay and its potential impact on judicial proceedings.

With respect to finding prejudice, the conclusion must be based on facts in evidence and cannot be an imagined or hypothetical harm. *See PacifiCorp v. W.R. Grace*, No. 05-764, 2006 WL 2375371, at *11, 2006 U.S. Dist. LEXIS 57470, *40-41 (D.Del. Aug. 16, 2006) (citing *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999)). Courts have considered the following as relevant to the determination:

> the size of the claim with respect to the rest of the estate; whether allowing the late claim would have an adverse impact on the judicial administration of the case; whether the plan was filed or confirmed with knowledge of the existence of the claim; the disruptive effect that the late filing would have on the plan or upon the economic model upon which the plan was based; and whether allowing the claim would open the floodgates to other similar claims.

*See Draw Another Circle*, 595 B.R. at 180-81 (citing *O'Brien*, 188 F.3d at 126)). Here, Ms. Yagan's claim was filed prior to the filing of the Plan that is presently pending (i.e. the third amended plan) and is addressed within the Plan. Based on the record, there is no evidence that allowing the claim would open the floodgates to similar claims. However, the size of the claim is substantial on its face. It is especially substantial in this case in comparison to other claims.[19] In addition, given the unknown theory of damages, with little support, allowing the claim would

---

[19] As Ms. Yagan has been advised on multiple occasions, the Proof of Claim and supporting documents fail to identify claims against the Debtor let alone support an $11 million claim. As set forth by Debtor's counsel on the record, the amount is more than all the other unsecured creditors' claims combined. *See* Audio Recording at 12:14:58-12:15:06.

likely disrupt this case and result in significant cost.[20] *See Draw Another Circle*, 595 B.R. at 182 (addressing a late claim motion with "a mixture of legal conclusions and unknown theories of damages, with little or no credible support" and finding leave to file such a claim would be disruptive to the administration of the estate); *In re Smidth & Co.,* 413 B.R. 161, 167 (Bankr.D.Del. 2009) (noting that the debtor worked diligently toward resolution of the case and allowance of the late claim would result in an additional burden and extensive litigation). The considerations regarding the danger of prejudice to the Debtor are mixed but overall favor the Debtor.

Finally, as to the length of the delay, Ms. Yagan did not file her claim until over one year after the bar date expired. The length of time is significant and weighs against a finding of excusable neglect. Although a plan has not yet been confirmed, the claim was filed at a time when the Debtor had resolved all outstanding disputes in this case setting the foundation for a confirmable plan to be filed. Therefore, the filing of an unanticipated[21] $11 million claim one year after the bar date is not insignificant.[22] Upon consideration of the length of the delay and its potential impact on judicial proceedings, this factor does not weigh in favor of a finding of excusable neglect.

---

[20]   It appears that Ms. Yagan's claim involves allegations against multiple parties. Ms. Yagan has asserted that the Debtor aided and abetted the Town of Dewitt in the cover up of a vehicular assault, and she indicated her intent to file a lawsuit against Debtor and other entities, including the Town of Dewitt, the police department, and Onondaga County. *See* Audio Recording at 9:35:30-9:37:40, 9:42:50-9:44:45. Based on the details provided with respect to the alleged incident in 2017 as well as the difficulty in understanding the theory of liability with respect to the Debtor, the Debtor will likely incur significant time and money litigating a claim that instead appears to be made against other entities and individuals.

[21]   As evidenced by the Schedules filed in this case, Debtor disputed any claim by Ms. Yagan and valued said claim at $0. There is no reason to believe that Debtor could have anticipated the filing of an $11 million claim over one year after the bar date.

[22]   *See W.R. Grace*, 2006 WL 2375371, at *13, 2006 U.S. Dist LEXIS 57470, at *46 ("Nonetheless, as the Bankruptcy Court stated, the delay in this case is not insignificant: 'This debtor is well on the road toward trying to get a confirmable plan together. Having filed these claims at this point in time will jeopardize that process.'").

The burden was on Ms. Yagan to establish excusable neglect. Notably, Ms. Yagan has not provided a sufficient, credible reason for filing her claim over one year after the bar date, which constitutes a significant delay. Upon consideration of the *Pioneer* factors, there is, *at most*, minimal support in the record to find excusable neglect. Having considered and weighed all relevant factors and finding the considerations overwhelmingly weigh in favor of Debtor, the Motion to Allow must be denied. While Ms. Yagan appears to assert claims stemming from the underlying incident in 2017 against various parties, this ruling in no way precludes her from proceeding against non-debtors to the extent applicable law permits.

## Conclusion

Based on the foregoing, Ms. Yagan failed to meet her burden to establish excusable neglect. Therefore, the Motion to Allow is denied. The late claim is disallowed. An order will be entered consistent with this Memorandum Opinion.

Dated: July 7, 2021

/s/ Carlota M. Böhm
Carlota M. Böhm
Chief United States Bankruptcy Judge

FILED
7/7/21 9:08 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**MAIL TO:**

Office of the United States Trustee

Sarah Wenrich, Esq.

Desiree Yagan
1162 West Belden Ave.
Syracuse, NY 13204