**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>SHOPPINGTOWN MALL NY LLC,<br><br>Debtor. | Bankruptcy No. 19-23178-CMB<br><br>Chapter 11<br><br>Related to Doc. Nos. 722, 726, 734, 735, and 736 |
| NANCY CHAPPELL, individually and as Administratrix of the estate of STEPHEN GUDKNECHT, deceased; KEVIN HICKS, individually and as Administrator of the Estate of CHRISTOPHER C. HICKS, deceased; and JESSICA SAUM,<br><br>Movants,<br><br>v.<br><br>SHOPPINGTOWN MALL NY LLC,<br><br>Respondent. | |

# MEMORANDUM OPINION

Ultimately seeking to file a motion for retroactive relief from the automatic stay to allow their wrongful death and personal injury litigation to proceed in state court, the Movants, Nancy Chappell, individually and as Administratrix of the Estate of Stephen Gudknecht, deceased; Kevin C. Hicks, individually and as the Administrator of the Estate of Christopher C. Hicks, deceased; and Jessica Saum (the "Movants"), filed their Motion to Reopen ("Motion") the closed bankruptcy case of Shoppingtown Mall NY LLC ("Shoppingtown"). As more fully set forth herein, the Court examines the potential futility of the underlying request for relief—in this instance, retroactive relief from stay. Generally, the automatic stay is "a fundamental protection for all parties affected

by the filing of a petition in bankruptcy." *In re Coletta*, 380 B.R. 140, 147 n. 17 (Bankr. E.D. Pa. 2007), *subsequently aff'd*, 336 F. App'x 202 (3d Cir. 2009). Creditors have an affirmative duty to not violate the automatic stay. *In re Myers*, 491 F.3d 120, 128 (3d Cir. 2007). Moreover, there is a "rather narrow category of cases in which [retroactive stay] relief has been deemed appropriate," and retroactively annulling the stay requires a greater showing as "[the stay] should not be dismantled without good reason." *Coletta*, 380 B.R. 140, 147. The question is whether the Motion should be granted to allow Movants to seek retroactive relief from the automatic stay. The Court finds that the Motion must be denied.

**Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Further, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Factual Background[1]**

Shoppingtown, as the owner and operator of a shopping center in DeWitt, New York, filed its Chapter 11 Petition on August 13, 2019. *See* Doc. No. 1. The final day to file a proof of claim was on December 31, 2019, and its Third Amended Chapter 11 Plan was confirmed on August 3, 2021. *See* Doc. Nos. 23 and 662. The Final Decree was entered on December 1, 2021, and the case was closed on December 16, 2021. *See* Doc. Nos. 718 and 720.

During the pendency of Shoppingtown's bankruptcy case, three complaints, all relating to the same incident at the Chili's Restaurant located on Shoppingtown's real property, were filed against Shoppingtown and other co-defendants by the Movants in the New York State Supreme Court for the County of Onondaga.[2] *See* Objection and Reservation of Rights at ¶7. Movants

---

[1] These facts are generally undisputed unless otherwise noted.
[2] The other co-defendants include Chili's, Inc.; Pepper Dining, Inc.; Pepper Dining, Inc. Pepper Dining Holding Corp.; Brinker Restaurant Corporation; Brinker International, Inc.; Pepper Dining, Inc. Brinker International Payroll Company, LP; Chili's Inc.; Shoppingtown Mall Management, LLC; Moonbeam Capital Investments, LLC;

Chappell and Hicks filed separate wrongful death actions against Shoppingtown and the other co-defendants respectively on August 21, 2020, and September 2, 2020; and Movant Saum filed a personal injury suit against Shoppingtown and the other co-defendants on January 7, 2021. *See id*.

According to Movants, they were unaware of Shoppingtown's pending bankruptcy case when they filed their actions in state court and inadvertently violated the automatic stay. *See* Motion at ¶8.[3] Shoppingtown filed answers and amended answers to the complaints of the three state court actions,[4] and as an affirmative defense, it stated that Movants could not maintain an action against Shoppingtown due to the bankruptcy.[5] *See id*.; and Objection and Reservation of Rights at ¶¶8-9. Based on the record, the earliest notice provided from the answers was on February 3, 2021, and the latest was June 9, 2021, in the state court actions. *See* Exhibit A to Motion and Exhibits A and B to Movants' Reply in Support. The affirmative defense was the first mention of the bankruptcy to the Movants by Shoppingtown, but it would not be the last.

On May 23, 2022, counsel for Shoppingtown and the other co-defendants sent a "pre-conference statement" to the Honorable Scott DelConte[6] and copied Movants' counsel regarding all three actions. *See* Exhibit A of Objection and Reservation of Rights. Within the letter, counsel

---

Moonbeam Leasing & Management, LLC; Moonbeam Holdings, LLC; Brinker, LLC; Brinker Services Corporation; U.S. Security Associates, LLC; Allied Universal Security Services, Inc; XYZ Corporation #1 substituted – Allied Security Holdings, LLC; XYZ Corporations #3 through 10, said true names being unknown and fictitious and ABC other entities #1 through 10, said true names being unknown and fictitious. To the extent there appears to be duplications of entities, this is an exact reproduction of the defendants listed on Exhibit A of the Motion.

[3] Shoppingtown does not dispute that it did not list Movants as creditors in its bankruptcy case or amend its schedules after the state court actions were commenced. *See* Debtor's Response to Supplemental Memorandum at 4.

[4] According to the Movants, their exhibits and examples are "from the personal injury action of [Movant] Saum;" however, Shoppingtown filed "substantially identical papers in all three lawsuits." *See* Motion at 4 n. 1. Thus, the Court will, when referring to individual exhibits applicable to one state court action, presume similar language was used in all three state court actions.

[5] The Third Affirmative Defense of each answer from the exhibits states: "Upon information and belief, plaintiff's cause of action may not be maintained because defendant Shoppingtown Mall NY, LLC has been discharged from liability in this action in bankruptcy." *See* Motion at ¶8; Exhibit A of the Motion at ¶19; Exhibit A to Movants' Reply in Support at ¶19; and Exhibit B to Movants' Reply in Support at ¶30. The Court notes that Movants rely heavily on the mischaracterization of the claims being discharged, but this argument misses the mark. The affirmative defense clearly provided notice of a bankruptcy case and the assertion that litigation was enjoined as a result.

[6] Hon. Scott J. DelConte presides in the New York State Supreme Court for the County of Onondaga.

specified that Shoppingtown had filed for bankruptcy prior to the commencement of the state court actions. *Id.* [7] Additionally, the Movants asked Shoppingtown for a bill of particulars for more clarification about its bankruptcy, and on June 30, 2022, Shoppingtown provided a "Verified Bill of Particulars" stating that the Movants improperly commenced the state court proceedings as they failed to file a motion for relief from stay in Shoppingtown's bankruptcy case.[8] *See* Exhibit B of Motion.

Sometime in September 2025, Shoppingtown filed motions to dismiss the wrongful death matters "on the basis that the automatic stay barred the litigation."[9] *See* Motion at ¶13. The motions to dismiss are premised on Movants having commenced the actions in violation of the stay. *See* Objection and Reservation of Rights at ¶30. If Movants fail to obtain retroactive relief from the automatic stay, the statute of limitations would end in January 2023 for the wrongful death lawsuits and in 2024 for the personal injury lawsuit, and Movants would be unable to re-commence their litigation against Shoppingtown if the current actions are dismissed. *Id.* at ¶32. Consequently, on January 14, 2026, Movants filed this Motion to reopen Shoppingtown's bankruptcy case so that they could then move for retroactive relief from stay in order for the state court actions to proceed against Shoppingtown. *See* Motion.

---

[7] The letter states in pertinent part: "As you may be aware, Shoppingtown Mall filed for bankruptcy protection well prior to the commencement of these actions… Shoppingtown is protected by the provisions of the Bankruptcy Code that provides for a stay against commencement of all proceedings against it during the bankruptcy proceedings. Further, it does not appear these plaintiffs sought a lifting of such stay to commence these proceedings." *See* Exhibit A of Objection and Reservation of Rights.

[8] In Exhibit B of the Motion, the first paragraph states "In regard to the Shoppingtown Mall defendants, the matter was improperly commenced as the defendants had filed for Bankruptcy prior to the plaintiffs' commencement of this suit and plaintiffs have not sought permission from the Bankruptcy Court to commence an action against these defendants." *See* Exhibit B of the Motion. Paragraph two states, "Further, plaintiffs improperly commenced the action against the Shoppingtown defendants in violation of the applicable Bankruptcy statutes." *Id.* The third paragraph states, "Upon information and belief, prior to commencing the action the plaintiffs failed to seek approval or a lifting of the statutory stay which precludes the plaintiffs from commencing or continuing this action against them..." *Id.*

[9] The Court notes that the filings indicate the motions to dismiss were only filed in the wrongful death actions. However, the Court presumes that the additional Movant from the personal injury action joins in the Motion to avoid the same consequence.

## **Legal Standard**

Reopening a closed case rests within the Court's sound discretion. *In re Roberts*, 659 B.R. 271, 278 (Bankr. W.D. Pa. 2024) (citing *In re Lazy Days' RV Ctr., Inc.*, 724 F.3d 418, 422-23 (3d Cir. 2013)). Under 11 U.S.C. § 350(b) and Fed.R.Bankr.P. 5010, a case may be reopened to administer assets, to accord relief to the debtor, or for other cause. As enumerated in *Roberts*, courts consider various factors to determine whether to reopen a closed case:

> (1) the length of time the case has been closed; (2) whether the [moving] party may obtain relief in an alternative forum; (3) whether any party would be prejudiced by the reopening of the bankruptcy case; (4) any benefit that may accrue to the debtor as a result of reopening; and (5) whether, if the case was reopened, the [moving] party is entitled to any relief.

*See id*. The fifth factor specifically turns on the futility of reopening which requires an assessment of whether the Court can provide the underlying relief sought through the motion to reopen and whether reopening would be a waste of judicial resources. *Id*. at 280 (citing *Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010)). As succinctly put in *Roberts*, a movant "must demonstrate that the chance of success in the underlying litigation is materially more than negligible, but need not be certain." *Id*. at 281. Notably, it is not required that the Movants "fully prove the merits" of the underlying relief sought. *Id*. In the simplest of cases, futility is easily revealed by "it [being] 'clear at the outset that the [moving party] would not be entitled to any relief if the case were reopened.'" *Id*. (quoting *In re Antonius*, 373 B.R. 400, 405-06 (Bankr. E.D. Pa. 2007)).

To examine futility in this case, the underlying relief to be analyzed is the entitlement of Movants to retroactive relief from stay. *See generally* Motion. When a debtor commences its

bankruptcy, there is a general principle "that any creditor action taken in violation of an automatic stay is void *ab initio*." *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994). However, under 11 U.S.C. § 362(d), the Court may provide retroactive relief through the annulment of the stay. *Id*. at 751. The use of the word "annulling" in § 362(d)— "the court shall grant relief from the stay…such as by terminating, annulling, modifying, or conditioning such stay"—indicates a congressional intent to "allow relief retroactively and validate proceedings that would otherwise be void *ab initio*." *Id*. However, the automatic stay is such an important component of bankruptcy that "creditors have an affirmative duty to prevent violations of the automatic stay and may be held liable for passively failing to prevent such violations." *Myers*, 491 F.3d at 128.

Annulling the automatic stay is a decision that rests within the bankruptcy court's discretion. *Id*. When determining whether a stay should be annulled, there are multiple factors to consider, and the bankruptcy court has "wide latitude" in evaluating these factors and "[balancing] the equities when granting relief from the automatic stay." [10] *In re Coletta*, 336 F. App'x 202, 205 (3d Cir. 2009) (citing *Myers*, 491 F.3d at 130). The most important factors are: "(1) whether the creditor was aware of the filing or encouraged violation of the stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be prejudiced."[11] *Myers*, 491 F.3d at 129. As the test requires balancing the equities, none of these

---

[10] The Third Circuit in *Myers* noted that "there is 'less appellate clarity' as to the appropriate 'test for retroactive stay relief.'" 491 F.3d at 129. As the court further expounded in *Coletta*, "[s]ome cases have stated that retroactive annulment of the automatic stay is only appropriate in 'extreme circumstances,' while other cases describe the 'wide latitude' that a bankruptcy court has to balance the equities." 336 F. App'x at 205 n. 3. Ultimately, "[although] it is not clear what, if any, differences there are between these two approaches," we must follow *Myers* in balancing the equities, and "[e]ven those cases that have subscribed to a narrow conception of the power to retroactively annul the stay have affirmed that balancing the equities is the appropriate test." *Id*.; *see also Myers,* 491 F.3d at 129.

[11] Courts within this circuit and outside apply a varying range of factors. Taking a more restricted view of the factors in *Myers*, the court in *Coletta* only identified "[two] of the most pertinent factors [to be] whether a creditor violated the automatic stay inadvertently and in ignorance of a pending bankruptcy and whether the debtor acted in bad faith." 336 F. App'x at 205. Meanwhile, the lengthy list of factors from *Fjelsted* from the Ninth Circuit B.A.P. has been cited as potentially relevant considerations:

1. the number of filings;
2. whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;

factors are dispositive alone. *In re Speights*, No. BANKR.08-11543DWS, 2008 WL 2096798, *2 (Bankr. E.D. Pa. May 15, 2008).

With respect to these significant factors, awareness of the debtor's bankruptcy filing is "treated as [having] knowledge of the automatic stay," and "some courts have found that oral or written notice of a bankruptcy filing is legally sufficient to convey knowledge of the automatic stay." *In re Shaw*, No. 25-12767, 2025 WL 2264394, *2 (Bankr. D.N.J. Aug. 7, 2025). Inequitable behavior has been described as filing for bankruptcy in bad faith or the debtor "encouraging a creditor to proceed notwithstanding the stay or lying in wait for the outcome of the creditor's actions, asserting its status as a bankruptcy debtor only after an outcome unsatisfactory to the debtor becomes known" like utilizing tactics to delay foreclosure. *Coletta*, 380 B.R. at 147 n. 18. Along with analyzing any prejudice faced by the Movants, the Court examines these significant factors as a component of the request to reopen, specifically whether Movants have demonstrated that the likelihood of obtaining retroactive relief from stay is materially more than negligible.

**Application**

As to the first factor of *Roberts* and the length of time which the case has been closed, Shoppingtown's bankruptcy case was closed on December 16, 2021. *See* Doc. No. 720. Movants filed their Motion on January 14, 2026. *See* Motion. At the latest, Movants were aware of the

3. a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;
4. the Debtor's overall good faith (totality of circumstances test);
5. whether creditors knew of stay but nonetheless took action, thus compounding the problem;
6. whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. the relative ease of restoring parties to the status quo ante;
8. the costs of annulment to debtors and creditors;
9. how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
10. whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. whether annulment of the stay will cause irreparable injury to the debtor;
12. whether stay relief will promote judicial economy or other efficiencies.

*See Coletta*, 380 B.R. at 147–48 n. 19 (citing *In re Fjeldsted*, 293 B.R. 12, 25 (B.A.P. 9th Cir. 2003)).

bankruptcy case on June 9, 2021, evidencing significant delay. Shoppingtown's case has been closed for over four years, which weighs heavily against the reopening of its case.

As to the second factor, retroactive relief from stay may only be obtained through the bankruptcy court. However, Movants intend to seek retroactive relief from stay to ultimately overcome motions to dismiss in their state court actions. *See* Objection and Reservation of Rights at ¶15. Movants and Shoppingtown do not discuss whether the Movants can possibly overcome the motions to dismiss or potential statute of limitations issues without retroactive relief from stay being granted, but for the purposes of weighing this factor, the Movants' underlying relief sought of retroactive relief from stay may only be granted in this Court. The second factor weighs in favor of granting the Motion.

As to the third factor, Shoppingtown asserts it will be prejudiced by the reopening of the bankruptcy case. Reopening the case would burden Shoppingtown with more fees and expenses to defend against a motion for retroactive relief from stay which was not diligently pursued by Movants. It is particularly prejudicial to Shoppingtown when the motion for retroactive relief from stay would be futile. *See infra*. Likewise, when considering the fourth factor, there is no foreseeable benefit to Shoppingtown in the reopening of its case, and it likely would be to Shoppingtown's detriment to do so. In fact, the only apparent benefit of reopening is to reward Movants for their dilatory and violative conduct. These initial factors all together weigh against reopening.

Further, as discussed herein, it is clear from the outset that Movants would not be entitled to the underlying relief sought if the case were reopened, and thus, their Motion is futile. Movants both contend that they never received notice until shortly before filing the Motion and that the notice they received was inadequate. *See* Supplemental Memorandum at 4. It is unfathomable that

Movants truly were not aware of Shoppingtown's bankruptcy until shortly before the filing of this Motion when Shoppingtown repeatedly raised the issue as a defense in the state court actions. *See supra* n. 5, 7-8. Movants have the affirmative duty to prevent violating the automatic stay,[12] and Shoppingtown in its "Verified Bill of Particulars" and its pre-conference statement made it more than clear that Movants' continued actions in state court violated the automatic stay. *See* Motion at ¶9; *see id*.[13] In actuality, the record shows that Movants actively and affirmatively violated the automatic stay by continuing to litigate their state court actions for years despite warnings from Shoppingtown. *See Myers*, 491 F.3d at 129.

Movants specifically contend that they did not have notice of the bankruptcy because they were not provided "with actual written notice of a debtor's bankruptcy filing and bar claims date" as known creditors to Shoppingtown. *See* Motion at ¶24. The awareness factor for retroactive relief from stay weighs "whether the creditor was aware of the filing or encouraged violation of the stay."[14] *Myers*, 491 F.3d at 129. As a foundational aspect of bankruptcy, the automatic stay is there to protect the debtor and other creditors. Awareness of the bankruptcy filing, and therefore awareness of the automatic stay, is evidently attributable to "oral or written notice of a bankruptcy filing" and even correspondence between counsel which occurred between Shoppingtown and

---

[12] *Myers*, 491 F.3d at 128.

[13] The Court additionally notes that it finds Movants' misrepresentation of the contents of the "Verified Bill of Particulars" especially egregious as pointed out by Shoppingtown. *See* Motion at ¶12; *see also* Objection and Reservation of Rights at ¶12. Movants conveniently left out the first two paragraphs of the "Verified Bill of Particulars" in their Motion which specifically state that Movants are in violation of the automatic stay for continuing with the state court actions. *Id*.

[14] The Court distinguishes this from Movants' reliance on *Chemetron Corp. v. Jones* in which "[t]he central issue…[was] whether plaintiffs were 'known' or 'unknown' claimants…" *See* 72 F.3d 341, 345 (3d Cir. 1995). As indicated in that case, "[i]nadequate notice is a defect which precludes *discharge* of a claim in bankruptcy." *See id*. at 346 (emphasis added). The issue before this Court, however, is not the adequacy of notice for determining whether these claims were discharged. Here, the argument is that the state court actions should not have been filed against Shoppingtown due to the existence of the automatic stay thereby requiring dismissal. The consequence of that is the potential inability to refile, not due to a discharge, but rather due to the expiration of the applicable statutes of limitation.

Movants in the state court actions. *See Shaw*, 2025 WL 2264394 at *2; *see also In re Kim*, No. 02-20654 (GMB), 2008 WL 442120, *7-8 (Bankr. D.N.J. Feb. 14, 2008).

Even if Shoppingtown failed to provide a case number, court location, or claims bar date, Movants were aware of the bankruptcy filing. *See* Motion at ¶11. From the answers, at minimum Movants were aware that (1) a bankruptcy had been filed and (2) Shoppingtown's position was that Movants were unable to proceed against it as a result.[15] Moreover, the "Verified Bill of Particulars" and the pre-conference statement undoubtedly make applicability of the stay clear. Movants have an affirmative duty to prevent violations of the automatic stay, and they failed to do so.

There has been no suggestion that Movants attempted to investigate or were unable to obtain information regarding the bankruptcy case. As argued by Shoppingtown, its bankruptcy case was widely publicized in Onondaga County,[16] and in July of 2021, this Court issued a Memorandum Opinion in the bankruptcy which had been published and contained the bankruptcy court and case number information. *See In re Shoppingtown Mall NY LLC*, 629 B.R. 391 (Bankr. W.D. Pa. 2021).[17] To the extent Movants assert that they were not aware of the bankruptcy until shortly before filing this Motion, that cannot be true. The Movants simply cannot feign ignorance to the existence of the bankruptcy case and the related automatic stay when it was disclosed in Shoppingtown's affirmative defenses, pre-conference statement, and "Verified Bill of Particulars."

---

[15] Regarding Movants' litigation strategy in the state court actions, the Court also questions how Movants could justifiably ignore the contention that the claims were *discharged* in bankruptcy, *even though that was a mischaracterization,* without further inquiring into the status of Shoppingtown's bankruptcy and independently investigating.

[16] *See* Debtor's Response to Supplemental Memorandum at 4 n.2.

[17] In this Internet age, the Movants could have easily found the information they claimed to lack, and clearly Movants were eventually able to find the court and case number for Shoppingtown's bankruptcy case as they have filed this Motion herein.

Moving onto whether Shoppingtown engaged in inequitable, unreasonable, or dishonest behavior, the Movants contend that "[Shoppingtown's] failure to disclose the claims, failure to provide notice, [and] failure to obtain court approval for counsel" amount to inequitable conduct. *See* Motion at ¶15. Under 11 U.S.C. § 521, debtors are required to file "a schedule of assets and liabilities… and a statement of the debtor's financial affairs." Although Shoppingtown did not list the Movants as creditors in its initial schedules or amend its schedules after the state court actions were commenced, any culpability from Shoppingtown does not rise to the level of "inequitable, unreasonable, or dishonest behavior" as it had absolved that conduct by giving notice to Movants of its bankruptcy.[18] *See Myers*, 491 F.3d at 129. *See also In re Kim*, 2008 WL 442120, at *6 (holding that the debtor rectified her inequitable behavior of failing to list the creditors in her schedules by having her attorney contact the creditors regarding her bankruptcy). Additionally, there is no indication of a purposeful omission by Shoppingtown from the initial schedules to deceive Movants.[19]

Not applying in this Court for approval of special counsel to represent Shoppingtown in the state court actions also does not rise to the level of inequitable conduct contemplated by *Myers*.[20] *Id*. There is no basis to find that Shoppingtown filed for bankruptcy in bad faith or as a way to delay litigation in the state court actions. Shoppingtown's actions cannot be construed as

---

[18] Movants have the burden under a motion to reopen to show why the case should be reopened. Movants seem to blame Shoppingtown for failing to take affirmative steps to enforce the automatic stay; however, that does not negate the effect of the automatic stay. Movants have not shown how judicial estoppel applies here. *See* Motion at ¶30 and Movants' Reply in Support at 7-8.

[19] Though it is clear that Shoppingtown was aware of the claims when the state court actions were commenced post-petition, it is unclear when Shoppingtown had notice, if at all, prior to the commencement of the actions. To the extent Shoppingtown's failure to amend schedules is evidence of inequitable conduct, the Court weighs that against the conduct of Movants. Further, Shoppingtown's affirmative duty of disclosure does not negate the Movants' obligation to respect the automatic stay.

[20] Under 11 U.S.C. § 330, a professional must be approved under 11 U.S.C. § 327 to receive compensation. The risk of failing to obtain court approval is losing compensation for providing services. *In re Young*, 646 B.R. 779, 783 (Bankr. W.D. Pa. 2022). Here, it is not disputed that Shoppingtown's counsel in the state court actions did not receive approval. However, it is not alleged that counsel unjustifiably received compensation from the bankruptcy estate or how this would amount to inequitable conduct in the context of resolving this Motion.

amounting to inequitable conduct for the purposes of retroactive relief from stay, especially when the Movants knew about Shoppingtown's bankruptcy and encouraged stay violations by proceeding with the state court actions despite having that knowledge.

If the Movants fail to obtain retroactive relief from stay, they may be prejudiced. Shoppingtown, in the wrongful death actions, filed motions to dismiss on the basis that Movants commenced the state court actions while the automatic stay was in place. Without retroactive relief from stay, Movants face the unfortunate possibility that they would not be able to re-commence their actions in state court against Shoppingtown due to the expiration of the statute of limitations. Thus, there is potential harm to Movants if they do not obtain retroactive relief from stay.[21] However, the Court notes that the automatic stay applied to actions against Shoppingtown, and this Court's ruling is not a statement regarding Movants' ability to proceed against the numerous co-defendants in the state court actions.

In balancing these factors to consider the futility of the Motion, the Court finds that it is patently clear that the Movants would not be entitled to the underlying relief sought of a retroactive relief from the automatic stay. It is extremely significant that Movants were aware of Shoppingtown's bankruptcy in 2021 but did not take steps to seek relief until 2026. At best, Movants did not understand the gravity of the automatic stay and carelessly plodded onward in the state court actions, and at worst, Movants deliberately ignored Shoppingtown's warnings and defenses including that Movants had commenced actions in violation of the stay. Either way, seeking retroactive relief from stay would be futile.

---

[21] If Movants had sought relief promptly after learning of Shoppingtown's bankruptcy, instead of actively and affirmatively violating the stay, relief may have been granted. *See* 11 U.S.C. § 362(d)(1).

**Conclusion**

In consideration of all five *Roberts* factors, the Court finds that the Motion must be denied. 659 B.R. at 278. It is clear from the outset that the Movants would not be entitled to any relief even if the case were reopened. To grant such a motion at this stage on this record wholly undermines the purpose of the automatic stay and would appear to not only condone the failure to take appropriate steps following notice but reward the failure. An appropriate Order will be entered consistent with this Memorandum Opinion.

Date: August 27, 2026

/s/ Carlota M. Böhm
Carlota M. Böhm
United States Bankruptcy Judge

SIGNED
8/27/26 10:39 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA